## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **TACILYN BURKE,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 6:17-cv-2172-RDP |
| } | |
| **NANCY A. BERRYHILL,** } | |
| **Acting Commissioner of Social Security,** } | |
| } | |
| Defendant. } | |

### MEMORANDUM OF DECISION

Plaintiff Tacilyn Burke brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the documents submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.  Proceedings Below**

On June 9, 2014, Plaintiff protectively filed an application for disability and disability insurance benefits ("DIB") under Title II of the Social Security Act alleging disability as of June 8, 2014. (R. 49, 144, 182-95). The Social Security Administration ("SSA") initially denied Plaintiff's application on September 8, 2014. (R. 49, 132-42, 144). On September 19, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 49, 98-126). That request was granted (R. 40, 49), and Plaintiff received a hearing before ALJ George Merchant on October 24, 2016. (R. 40, 48-49). On December 6, 2016, the ALJ issued a decision

which was unfavorable to Plaintiff. (R. 46-48). After the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision (R. 1-7), the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject for this court's review.

## II. Statement of Facts

Plaintiff's application alleges disability due to the following: various foot deformities, microcyst in bones of feet, spinal bone spurs, fibromyalgia, chronic pain syndrome, scoliosis, pineal gland cyst in brain, anxiety disorder, depression, severe migraines, and dyslexia. (R. 132). She completed four years of college and obtained a Bachelor of Science degree in communications. (R. 217, 320). She has past work experience as a caregiver at a group home, watching patients and handling medical billing. (R. 217-18). She was 29 years old at the time of the ALJ decision. (R. 59, 192).

In early March 2011, Plaintiff underwent a routine brain MRI at Walker Medical Diagnostics due to complaints of headaches. (R. 261). The MRI revealed probable minimal paranasal sinus disease and a pineal gland cyst which are "typically clinically silent but can become symptomatic if greater than 1 cm in size, as in this case." (*Id.*). On March 21, 2011, Plaintiff consulted with Dr. Carter S. Harsh at Neurosurgical Associates - Birmingham. (R. 271). Dr. Harsh reviewed the MRI and concluded: "I do not believe [the pineal region cyst] would be symptomatic." (*Id.*). He recommended a follow-up scan in four months. (*Id.*).

Plaintiff repeated the MRI in June 2011. (R. 268). The repeat MRI revealed "no significant change in cystic appearing mass in pineal gland since 3/09/2011," no hydrocephalus, and a "Chiari I malformation." (*Id.*). Continued follow up on the cyst was recommended. (R. 269). On July 21, 2011, these results were discussed with Plaintiff during her visit to Dr. Harsh. (R. 273).

Plaintiff was instructed to have a follow up MRI in one year and to be evaluated by a neurologist. (*Id.*).

On June 14, 2012, Plaintiff again repeated the MRI. (R. 270). No change in the pineal cyst was noted. (*Id.*). The Chiari I malformation was again noted. (*Id.*). On June 28, 2012, the results from the MRI were discussed with Plaintiff during her office visit with Dr. Harsh. (R. 275). She reported some stable headaches and some syncopal episodes. (*Id.*). She was instructed to have another MRI in 18 months and to follow up with another doctor regarding the syncopal episodes. (*Id.*).

Plaintiff was referred to Dr. Thomas B. Traylor at Rheumatology Associates, P.C. for "recent detected acute phase reactants." (R. 291). At the July 25, 2012 visit, Plaintiff reported: modest obesity unresponsive to diet restrictions, bilateral foot deformity with chronic persistent foot pain, fibromyalgia, impaired grip, lateral hip pain and left knee painful swelling, neck pain with headaches, and chronic relapsing back pain. (*Id.*). X-rays from the visit revealed mild to moderate weight-related dependent osteoarthritis with mild cervical disc disease, mild lumbar disc disease, and mild thoracolumbar scoliosis. (R. 294). Plaintiff was to start a "graduated program of Physical Rehabilitation Therapy" to "include the use of an assistive device for weight bearing, bracing, orthotics etc. as appropriate" and to follow up in three to four weeks. (*Id.*). Plaintiff continued to visit Dr. Traylor throughout 2012 and 2013, with notes indicating mild limited mobility in the neck and back, painful knee mobility, and axial painful mobility. (R. 277-78, 281). Plaintiff continued with Physical Rehabilitation Therapy. (R. 368-81).

Plaintiff underwent a gastric band procedure in July 2013. (R. 106-07, 277, 292, 294).

On August 6, 2014 Plaintiff, had a consultative exam with Dr. Samia S. Moizuddin at Walker Rural Health services. (R. 314). Dr. Moizuddin noted that Plaintiff was applying for

3

disability due to chronic body pain and depression/anxiety. (*Id.*). She found Plaintiff to be in no acute distress but did find waddling due to body habitus with no assistive device. (*Id.*). Plaintiff denied difficulty walking and exhibited full muscle strength in all groups, normal muscle tone, and intact sensations. (*Id.*). Dr. Moizuddin diagnosed Plaintiff with morbid obesity, chronic pain syndrome, GERD, obstructive sleep apnea, headache, depression, and anxiety. (*Id.*).

On August 14, 2014, Plaintiff underwent a consultative examination by Dr. Charles E. Houston. (R. 320-22). Dr. Houston diagnosed Plaintiff with generalized anxiety disorder, depressive disorder, some narcissistic tendencies, and multiple physical problems. (R. 321). He noted that Plaintiff "has difficulty with her gait sometimes due to foot problems" and "doesn't like to drive." (R. 321). Dr. Houston concluded that "[h]er ability to meet the demands of competitive employment is affected by her psychiatric problems, and possibly by her physical condition." (R. 322).

Radiology reports from May 2015 revealed mild multilevel degenerative disc disease of the lumbar spine. (R. 325). Plaintiff visited Dr. Ashish Shah at the Highlands Orthopedic Clinic on July 22, 2015 complaining of "pain over the right bunion," bilateral feet pain, and instability, but also reporting independence with all activities of daily living. (R. 358, 361). Two months later Plaintiff followed-up with Dr. Shah, now reporting that she was "essentially unable to work due to the pain and instability in her feet. She has been in ASO braces that she reports have no[t] helped foot pain and has even created some forefoot pains." (R. 352). Dr. Shah diagnosed Plaintiff with pes planus foot deformity and discussed surgery with her. (R. 328, 353-54). Plaintiff underwent surgery for right triple arthrodesis and gastroc recession on November 5, 2015, due to a "long history of right foot pain." (R. 329, 331-33).

Four weeks post-surgery, the hardware was well-positioned and pain was controlled. (R. 349-50). Stitches were removed and a short leg cast was placed. (R. 350). At her surgical follow-up visit on January 4, 2016, Dr. Shah noted that Plaintiff was in a walking cast but was doing well with pain controlled. (R. 346). The hardware was positioned well with the "hindfoot arthrodesis [appear]ing stable, without evidence of interval complication. There is unchanged appearance of the hallux valgus deformity and the mild degenerative arthrosis of the first toe MTP joint." (R. 347-48).

## III. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must

first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). With this step, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ made an initial determination that Plaintiff meets the insured status requirements of the Act through December 31, 2018. (R. 51). Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability, June 8, 2014. (*Id.*). The ALJ decided that, since the alleged date of onset, Plaintiff has had the following severe impairments: obesity, sleep apnea, lumbar facet arthropathy, fibromyalgia, bilateral pes plano valgus, bilateral hallux vagus calluses, anxiety, depression, and bipolar disorder. (*Id.*). Plaintiff's conditions of chiari malformation without hydrocephalus/syrinx and gastroesophageal reflux disease were found to be non-severe impairments because "[t]here are no limits or symptoms noted in the medical records" for chiari malformation, described as mild in nature, and "no evidence in any of her medical records" that Plaintiff's GERD "causes any work-related limitations." (*Id.*). After review, the ALJ determined that Plaintiff did not have "an impairment

6

or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 52-54).

The ALJ found that Plaintiff had the RFC to perform sedentary work, except she could not operate foot controls and was limited to simple work, occasional workplace changes, occasional interaction with the public, co-workers, and supervisors, and occasional work-related changes. (R. 54). After determining Plaintiff's RFC, the ALJ concluded that Plaintiff "was unable to perform any past relevant work." (R. 57). However, he also determined Plaintiff was capable of performing a significant number of other jobs in the national economy. (R. 58). Based upon these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from June 8, 2014 through the date of the decision. (R. 59). That decision is challenged here.

## IV. Plaintiff's Argument for Reversal

On appeal, Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity in combination with her other impairments. (Pl. Br., Doc. #11 at 12-13). Specifically, Plaintiff argues that: (1) in determining that impairments did not meet or medically equal a listed impairment, the ALJ did not analyze the impact of her obesity; (2) it is unclear whether the ALJ properly accounted for obesity in the RFC assessment; and (3) in discounting subjective complaints of pain, the ALJ failed to address obesity. (Doc. #11 at 12-18). Each argument is considered below.

## V. Standard of Review

The issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §

7

405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

It is axiomatic that Plaintiff "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Upon review of the entire record, the court concludes that Plaintiff has not met this burden, the Commissioner's decision is supported by substantial evidence, and it is in accordance with applicable law.

### A. The ALJ Properly Considered the Combination of Impairments at Step Three.

At step three of the five-step sequential process, the ALJ must determine whether a claimant's impairment or combination of impairments is of a severity to meet or medically equal

the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listings describe impairments that are considered severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimants' impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of proving that her impairments meet or equal a Listing. *See Kalishek v. Commissioner*, 470 Fed. Appx. 868, 870 (11th Cir. 2012); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To meet a Listing, Plaintiff must (1) establish that she has a diagnosed condition that is included in the Listings, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). To equal a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1525(a)-(d); *see Wilson*, 284 F.3d at 1224. A diagnosis alone is insufficient to meet a Listing's criteria. *See* C.F.R. § 404.1525(d); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a Listing's] criteria, no matter how severely, does not qualify."). Where obesity is an issue, that condition "may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p at *5. Plaintiff argues that the ALJ failed to discuss and evaluate her obesity and accompanying impairments in accordance with SSR 02-1p in step three of the analysis. (Doc. #11 at 6). The court disagrees.

The ALJ implicitly considered Plaintiff's obesity in finding that she did not meet a Listing. At step two, the ALJ found obesity to be one of Plaintiff's severe impairments. (R. 51). He then

9

determined that Plaintiff did not "have an impairment or combination of impairments" that met or medically equaled a Listing. (R. 51-52). While the term "obesity" was not expressly used in the step three analysis, neither were many of Plaintiff's other severe impairments – sleep apnea, lumbar facet arthropathy, bilateral pes plano valgus, bilateral hallux vagus calluses, and bipolar disorder. (R. 52-54). And there is a practical reason why symptoms related to Plaintiff's obesity were not included in this step of the analysis. There are *no* medical records indicating *any* limitations that Plaintiff experienced as a result of her obesity.[1] *See Vance v. Colvin*, 2016 WL 3519392, No. 2:15-cv-1483-RDP at *5 (N.D. Ala. June 28, 2016) (noting that a lack of restrictions from a physician, other than for claimant to watch his diet, constituted substantial evidence that claimant was not completely disabled). Therefore, the ALJ's finding that obesity did not alter the analysis at step three may be implied from the record. *Prince v. Commissioner*, 551 Fed. Appx. 967 (11th Cir. 2014) (finding no error in the ALJ's failure "to make detailed findings or explicitly discuss whether her impairments met or equaled a Listing" because the finding could be implied from the ALJ's discussion of the relevant medical evidence); *see also Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir.1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence).

Considering the record in its entirety, the court readily concludes substantial evidence supports the ALJ's conclusion that Plaintiff's obesity does not change the analysis at step three. *See* 42 U.S.C. § 405(g); *Martin*, 894 F.2d at 152.

---

[1] *See* discussion *infra* Section VI. B.

## B. The ALJ Considered Plaintiff's Obesity in the RFC Assessment.

The ALJ found that Plaintiff maintains the residual functional capacity to perform sedentary work, except, as relevant here, that she is precluded from operating foot controls, precluded from climbing ladders, ropes, or scaffolds, cannot engage in commercial driving, cannot operate machines, and must avoid exposure to unprotected heights or uneven terrain. (R. 54). Plaintiff argues that obesity "can cause limitation of function" and that this fact was not accounted for in the ALJ's RFC assessment. (Doc. #11 at 15) (quoting SSR 02-1p at *6-7).

In Plaintiff's case, the diagnosis of obesity comes with no explanation of resultant physical limitations. (R. 55, 315). To the contrary, Plaintiff's medical records evidence full muscle strength in all groups, normal muscle tone, intact sensations, and a normal unassisted gait. (R. 55-56, 315). After foot surgery, Dr. Shah documented that Plaintiff was "doing great" with no pain and good range of motion in her ankle. (R. 56, 329, 458-59). Musculoskeletal exams from December 2015, June 2016, and September 2016 were all normal. (R. 56, 434, 439, 441, 453). None of Plaintiff's treating physicians opined that her obesity resulted in physical limitations or recommended restrictions related to her obesity. Although Dr. Shah stated in September 2015 that Plaintiff was "essentially unable to work due to pain and instability in her feet," Dr. Shah did not assess Plaintiff with obesity or otherwise opine that limitations were due to obesity. (R. 56, 352). And he did not make any similar observation after Plaintiff's foot surgery.

An ALJ is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p at *4-6. A diagnosis of obesity, standing alone, is insufficient to establish disability. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating that the mere existence of an impairment does not reveal the extent to which it limits the ability to work or

11

"undermine the ALJ's determination in that regard"). Plaintiff presents no evidence that her obesity causes functional limitations. Therefore, considering the record in its entirety, the court easily concludes substantial evidence supports the ALJ's conclusion that Plaintiff's obesity does not change the RFC analysis. *See* 42 U.S.C. § 405(g); *Martin*, 894 F.2d at 1529.

### C. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain.

When, as here, a plaintiff alleges disability through subjective complaints of pain and other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Green v. Commissioner*, 2017 WL 3187048, No. 16-16272 at *4 (11th Cir. July 27, 2017); 20 C.F.R. § 404.1529. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies that she has experienced disabling pain and satisfies the three-part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony. *Crow v. Colvin*, 36 F.Supp.3d 1255, 1259 (N.D. Ala. July 28, 2014). That is, "after considering a plaintiff's complaints of pain, an ALJ may then reject them as not creditable." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). During the assessment, the ALJ is to consider the plaintiff's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). If the ALJ rejects a claimant's testimony regarding pain, the ALJ must articulate specific reasons for doing so. *Wilson*, 284 F.3d at 1225. The ALJ's decision

must provide a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In applying the pain standard, the ALJ found that Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms. (R. 55). However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence of record. (*Id.*). The ALJ considered Plaintiff's record as a whole, including laboratory, diagnostic, and clinical findings, medical opinions, Plaintiff's testimony, and daily activities in concluding that the allegations of pain were not entirely creditable.

The ALJ found inconsistencies between Plaintiff's testimony and her level of functioning. Plaintiff testified that she is unable to lift more than two pounds, and that she is unable to stand, walk, or sit for long periods. (R. 103-05, 107, 109). She testified that she spends the day in her recliner, is unable to drive or do any chores, and rates her daily pain at a 6 or 7 out of 10 on "good days." (R. 104, 107, 110, 116-19). However, in both the adult function report and the third-party adult function report, the answers provided indicate that Plaintiff is able to help care for pets, bathe/dress with only occasional assistance, feed herself, do laundry, wash dishes, shop in stores, manage funds/pay bills, share household responsibilities, read daily, watch television, spend time with others, play games, maintain attention for an average amount of time, follow a recipe, and finish what she starts. (R. 226-41). Obviously, an ALJ may properly consider a claimant's daily activities as a factor in determining the credibility of pain claims. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Medical evidence also fails to support Plaintiff's allegations of pain. For example, Plaintiff's brain cyst is noted as being asymptomatic, spinal films demonstrate mostly mild and

only one moderate finding of disc disease/spondylosis, CPAP treatment is effective, various findings of full muscle strength in all groups, normal muscle tone, intact sensations, normal unassisted gait, various physical exams revealing a normal musculoskeletal system with no acute distress, no more than mild multi-level degenerative disc disease, progressive healing of hind foot arthrodesis, well-controlled pain, and records indicating that Plaintiff was independent in all activities of daily living. (R. 55-56, 271, 294, 325, 329, 349-50, 434, 439, 441, 453, 458-59).

Based on the foregoing, the court finds that substantial evidence supports the ALJ's decision, and the ALJ was not clearly wrong in discrediting Plaintiff's testimony. *See Jerrell v. Commissioner*, 433 Fed. Appx. 812, 814 (11th Cir. 2011) (citing *Holt*, 921 F.2d at 1223) (holding that statements concerning the intensity, duration, and limiting effects of Plaintiff's symptoms were not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from that condition); *Werner v. Commissioner*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this February 12, 2019.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE